## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH HENSLEY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:23-cv-01327** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **PENNSYLVANIA** | : | |
| **DEPARTMENT OF** | : | |
| **CORRECTIONS, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Joseph Hensley ("Plaintiff"), a state prisoner in the custody of the

Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at State

Correctional Institution Frackville ("SCI Frackville") in Frackville, Pennsylvania.

He has commenced the above-captioned action by filing a <u>pro se</u> complaint pursuant

to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his

constitutional rights while incarcerated at State Correctional Institution Huntingdon

("SCI Huntingdon") in Huntingdon, Pennsylvania.[1]  (Doc. No. 1.)  In accordance

---

[1]  To be clear, although Plaintiff alleges that venue is appropriate in the Middle
District because the events giving rise to his claims occurred here (Doc. No. 1 at 2),
he does not specifically state that those events occurred while he was incarcerated at
SCI Huntingdon.  Nevertheless, when the complaint is read, as a whole, it is apparent
to the Court that the alleged events occurred there. <u>See, e.g.</u> (<u>id.</u> at 1–3 (referencing
SCI Huntingdon and its staff)).

with the Prison Litigation Reform Act,[2] the Court has conducted an initial review of Plaintiff's complaint.  For the reasons set forth below, the Court will dismiss Plaintiff's complaint but without prejudice to him filing an amended complaint.  In addition, the Court will deny, without prejudice, his pending motion for the appointment of counsel.

## I.    BACKGROUND

On August 10, 2023, Plaintiff filed his Section 1983 complaint against the following entities and individuals: (1) the Pennsylvania Department of Corrections ("DOC"); (2) the Pennsylvania Board of Parole; (3) Captain D. Wendel; (4) Psychologist Tristan Conway; (5) Psychiatric Certified Registered Nurse Practioner Jessica Cousins; (6) Doctor Paul DelBianco; (7) Doctor Dancha; (8) Nurse Courtney Romper; (9) CO I McCloskey; (10) CO I Beatty; and (11) SCI Huntingdon Staff. (Doc. No. 1 at 1.)  In addition to the complaint, Plaintiff has also filed motions for leave to proceed in forma pauperis (Doc. Nos. 5, 10) and prisoner trust fund account statements (Doc. Nos. 11, 15), as well as a motion seeking the appointment of counsel (Doc. No. 7).  The Court, having reviewed Plaintiff's motion and account statements, will grant him leave to proceed in forma pauperis and will deem his complaint filed.

---

[2]  See The Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (Apr. 26, 1996).

In his complaint, Plaintiff sets forth very few allegations against the numerous Defendants that he has named.  More specifically, Plaintiff alleges that, on August 2nd (year unidentified), Defendants McCloskey and Beatty brought Weaver (a non-party) "past [his] cell for a phone conference[,] [d]espite them knowing about the issues" and that they let Weaver harass and intimidate him.  (Doc. No. 1 at 4.)

In addition, Plaintiff alleges that, on July 31, 2023, Defendant Ramper told Plaintiff that he was not prescribed an inhaler, which Plaintiff contends was a lie. (Id. at 4.)  Plaintiff alleges that Defendant Ramper later saw an inhaler with his name on it and told Plaintiff that it had disappeared.  (Id.)  Although Defendant Ramper claimed that she did not know what happened to the inhaler, Plaintiff asserts that she was the only nurse in the Restricted Housing Unit "drug room."  (Id.)  Plaintiff acknowledges, however, that Defendant Ramper made his inhaler "reappear"  (Id.)

Additionally, Plaintiff claims that Defendant Ramper did "not know how to do [his] Nitro Paste."  (Id.)  Plaintiff also claims that she said to him that, if it was up to her, Plaintiff would get "NOTHING."  (Id.)  According to Plaintiff, Defendant Ramper was going to tell Defendant DelBianco to discontinue Plaintiff's Nitro Paste, "all because she doesn't want to do it."  (Id.)  Also according to Plaintiff, on three (3) separate occasions, Defendant Ramper suggested that she never used Nitro Paste before and did not know what she was doing.  (Id.)  Plaintiff alleges that he tried to explain to her that he only gets a half inch of the Nitro Paste, but Defendant Ramper

ignored him and put two (2) inches "on the card[,] which could potentially kill [him]." (Id.)

Finally, Plaintiff alleges that, on August 1, 2023, Defendant DelBianco came to his cell and told him that Defendant Dancha refused to approve his EMG and MRI to see what was wrong with his spine. (Id. at 5.) Plaintiff alleges that he "keeps getting worse" and is "losing feeling in [his] hands" and that, when he moves, "a sharp pain shoots up [his] spine." (Id.)

In connection with these various allegations, Plaintiff alleges that the "staff" is trying to get him killed and that they treat his "suicide attempts and assault" as "a joke." (Id. (stating that "[t]hey all come to [his] cell laughing" about it).) Additionally, and in connection with these various allegations, Plaintiff asserts violations of his rights under the Eighth Amendment to the United States Constitution. (Id.) For relief, he seeks monetary damages, as well as declaratory and injunctive relief. (Id. at 6.)

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). District courts have a similar

screening obligation with respect to actions filed by prisoners proceeding <u>in forma</u> <u>pauperis</u> and prisoners challenging prison conditions. <u>See</u> <u>id.</u> § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> <u>Tourscher v. McCullough</u>, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When

5

evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

## III.   DISCUSSION

### A.   Plaintiff's Requests for Injunctive and Declaratory Relief

In his complaint, Plaintiff seeks injunctive and declaratory relief related to SCI Huntingdon, the institution at which his constitutional rights were allegedly violated.  (Doc. No. 1.)  Since the commencement of this lawsuit, however, Plaintiff has been transferred to SCI Frackville.  See, e.g., (Doc. No. 21 at 2).  As a result, Plaintiff's requests for injunctive and declaratory relief are now moot.  See Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (explaining that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims" (citation omitted)).  Plaintiff has not provided any allegation that he is reasonably likely to be transferred back to SCI Huntingdon.  Moreover, such claims are generally not subject to the "capable of repetition yet evading review" exception to the mootness doctrine.  See, e.g., Griffin v. Beard, 401 F. App'x 715, 716–17 (3d Cir. 2010) (unpublished) (concluding that the inmate's claims for injunctive and declaratory relief were moot when the inmate had been transferred to another prison, and noting that the limited "capable of repetition yet evading review" exception did not apply, as there was no assertion that he would likely be returned to the prison).

**B.**     **Defendants the DOC and the Pennsylvania Board of Parole**

In his complaint, Plaintiff names the DOC and the Pennsylvania Board of Parole as Defendants.  (Doc. No. 1 at 1, 2.)  However, for the reasons discussed below, the Court finds that these Defendants have Eleventh Amendment immunity and, further, are not considered "persons" for purposes of Section 1983.

"[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."  Kentucky v. Graham, 473 U.S. 159, 169 (1985); Lombardo v. Pennsylvania, 540 F.3d 190, 194 (3d Cir. 2008) (explaining that "[t]he immunity of States from suit in the federal courts is a fundamental aspect of state sovereignty").  It is well-established that the Commonwealth of Pennsylvania has not waived this immunity, see 42 Pa. Const. Stat. Ann. § 8521(b), and that Congress did not abrogate the States' Eleventh Amendment immunity in enacting Section 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (stating that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" (citation omitted)); Quern v. Jordan, 440 U.S. 332, 341 (1979) (explaining that Section 1983 does not override the States' Eleventh Amendment immunity).

Further, this Eleventh Amendment immunity extends to all state agencies, departments, and entities "having no existence apart from the state."  See Laskaris

8

v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citation omitted).   As such,

Defendants the DOC and the Pennsylvania Board of Parole are entitled to the same

Eleventh Amendment immunity that the Commonwealth of Pennsylvania enjoys.

See 71 P.S. § 61(a); Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 310 (3d

Cir. 2020) (explaining that "state sovereign immunity prohibit[ed]" the plaintiff's

Section 1983 claims against the DOC defendants, including the DOC itself);

Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir.

2008) (observing that, "[a]s an arm of the State, an individual judicial district and its

probation and parole department are entitled to Eleventh Amendment immunity").

Additionally, in order for Plaintiff to state a claim under Section 1983, he must

allege that a "person" acting under the color of state law deprived him of his

constitutional rights.  See Rehberg v. Paulk, 566 U.S. 356, 361 (2012).  However, a

state agency, such as the DOC, is not considered a "person" for purposes of Section

1983 and, thus, is not amenable to suit under this statute.  See Fischer v. Cahill, 474

F.2d 991, 992 (3d Cir. 1973) (stating that a state agency may not be sued under

Section 1983 because it is not a "person" for purposes of that statute); Foye v.

Wexford Health Sources Inc., 675 F. App'x 210, 215 (3d Cir. 2017) (unpublished)

(dismissing Section 1983 claims against the DOC and one of its institutions because

they were entitled to Eleventh Amendment immunity and "are not persons subject

to suit under" Section 1983).

The Pennsylvania Board of Parole is likewise not considered a "person" for purposes of Section 1983.  See Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977) (stating that the Pennsylvania Board of Parole and Pardon "cannot be sued for it is not a 'person' within the meaning of Section 1983"); Moore v. Montgomery Cnty. Dist. Att'y Off., No. 22-2642, 2023 WL 5972045, at *2 (3d Cir. Sept. 14, 2023) (unpublished) (stating that "[t]he Pennsylvania Parole Board is also not a cognizable [Section] 1983 defendant for money damages" (citation omitted)).

Accordingly, for all of these reasons, the Court concludes that Plaintiff's complaint fails to state a claim upon which relief can be granted against Defendants the DOC and the Pennsylvania Board of Parole.  Any Section 1983 claims that Plaintiff has asserted against these Defendants for monetary damages will, therefore, be dismissed.

## C.    Defendants Wendel, Conway, Cousins, and Huntingdon Staff

As discussed above, Plaintiff filed his complaint pursuant to the provisions of Section 1983.  (Doc. No. 1.)  That statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

Additionally, in order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his constitutionally protected rights.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, see id. (citation omitted), which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee

relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago, 629 F.3d at 128 (quoting Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 692 (1978)).

Here, the Court finds that there is a complete absence of allegations in the complaint that would give rise to a plausible inference that Defendants Wendel, Conway, and Cousins were personally involved in an asserted deprivation of Plaintiff's constitutionally protected rights. While Defendants have been named in the complaint (Doc. No. 1 at 1, 2–3), they have not been mentioned or meaningfully discussed anywhere else in the body of the complaint. Without such allegations of personal involvement, the Court concludes that the complaint fails to plausibly state a Section 1983 claim upon which relief can be granted against these Defendants.

Additionally, without such allegations of personal involvement, the Court also concludes that the complaint fails to satisfy Rule 8 of the Federal Rules of Civil Procedure. Rule 8 governs the general rules of pleading, and it requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). This short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest. See Erickson, 551 U.S. at 93. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief[; it] "has to show such

an entitlement with its facts." See Fowler, 578 F.3d at 211 (citation and internal quotation marks omitted).

Here, although the complaint broadly asserts that Defendants violated Plaintiff's Eighth Amendment, it does not show how Defendants Wendel, Conway, and Cousins were personally involved in that asserted violation. As a result, the Court has been left—and these Defendants, if served, would also be left—to speculate as to what alleged conduct on their part gives rise to Plaintiff's claims. Accordingly, because the complaint does not provide fair notice of the grounds upon which Plaintiff's claims rest, the Court concludes that the complaint does not satisfy Rule 8 of the Federal Rules of Civil Procedure as it pertains to Defendants Wendel, Conway, and Cousins. See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019) (stating that, "[n]aturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8" (citations and internal quotation marks omitted)); Binsack v. Lackawanna Cnty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011) (unpublished) (affirming district court's dismissal of a complaint where it "defie[d] any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted [a cause of action]").

The Court further finds that the complaint also does not satisfy Rule 8 of the Federal Rules of Civil Procedure as it pertains to Defendant SCI Huntingdon staff.

While Plaintiff broadly and vaguely alleges that "all SCI Huntingdon staff are responsible for the CARE, CUSTODY, and CONTROL of ALL inmates at SCI Huntingdon" (Doc. No. 1 at 3), Plaintiff does not identify any specific individuals in his allegations, other than the named Defendants. Instead, Plaintiff attributes such allegations to "staff" or "they[.]"  <u>See, e.g.</u>, (Doc. No. 1 at 5).  Such general allegations, however, do not comply with Rule 8(a)(2), which—as set forth above—requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>See</u> Fed. R. Civ. P. 8(a)(2).  Indeed, when providing fair notice under this federal pleading standard, it is critical that a plaintiff's Section 1983 complaint makes clear who, exactly, is alleged to have done what and when such alleged action or inaction occurred.

Accordingly, for all of these reasons, the Court will dismiss Plaintiff's Section 1983 claims against Defendants Wendel, Conway, Cousins, and SCI Huntingdon Staff for failure to state a claim upon which relief can be granted.

### D.    Defendants DelBianco, Dancha, and Ramper

In his complaint, Plaintiff appears to be attempting to assert that Defendants DelBianco, Dancha, and Ramper violated his Eighth Amendment rights in connection with his medical care at SCI Huntingdon. (Doc. No. 1 at 4–5.) The Court finds, however, that Plaintiff's allegations fall short of stating an Eighth Amendment claim upon which relief can be granted under Section 1983. In order

for Plaintiff to state a claim for inadequate medical care under the Eighth Amendment, he "must allege (1) a serious medical need and (2) acts or omissions by [individuals] that indicate a deliberate indifference to that need." See Thomas v. City of Harrisburg, 88 F.4th 275, 281 (3d Cir. 2023) (footnote, citations, and internal quotation marks omitted)).  "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering,' and a doctor has diagnosed the condition, or the need for treatment would be obvious to a lay person." See Dooley, 957 F.3d at 374 (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991)).  And, individuals "are deliberately indifferent to such needs when they are actually aware of a substantial risk of serious harm and disregard that risk."  See id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Here, Plaintiff's complaint has asserted various allegations concerning his inhaler, his Nitro Paste, and an EMG and MRI for his back.  (Doc. No. 1 at 4–5.) However, Plaintiff's complaint does not identify (or at least clearly identify) that he had a serious medical need.  Without such allegations identifying a serious medical need, the Court is unable to draw the inference that Defendants were deliberately indifferent to that need.  In addition, even assuming arguendo that Plaintiff's complaint has sufficiently alleged a serious medical need concerning his inhaler, his Nitro Paste, or the EMG/MRI, the Court finds that it has not alleged facts upon which the inference could be made that Defendants DelBianco, Dancha, and Ramper each

acted with deliberate indifference to that need.[3]  See Farmer, 511 U.S. at 837 (explaining that the prison official must be aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference).  As such, Plaintiff's complaint fails to state an Eighth Amendment claim upon which relief can be granted against Defendants DelBianco, Dancha, and Ramper under Section 1983.

### E.      Defendants McCloskey and Beatty

In his complaint, Plaintiff alleges that, on August 2nd (year unidentified), Defendants McCloskey and Beatty brought Weaver "past [his] cell for a phone conference[,] [d]espite them knowing about the issues" and that they let Defendant Weaver harass and intimidate him.  (Doc. No. 1 at 4.)  The Court finds, however, that Plaintiff's allegations fall short of stating a claim upon which relief can be granted under Section 1983.  The alleged actions of these Defendants, even if true, simply do not amount to a constitutional violation.  Indeed, conduct such as verbal harassment, taunting, and the use of profanity, without any injury or threat thereof,

---

[3]  At most, Plaintiff's complaint alleges that Defendant Ramper put two (2) inches of Nitro Paste "on the card[,] which could potentially kill [him]." (Doc. No. 1 at 4.) However, Plaintiff's complaint does not allege (or at least clearly allege) that Defendant Ramper knew of facts from which the inference could be drawn that a substantial risk of harm existed for Plaintiff with respect to the Nitro Paste and, further, that she actually drew that inference. Rather, Plaintiff's complaint suggests that Defendant Ramper lacked knowledge concerning the Nitro Paste.  See, e.g., (Doc. No. 1 at 4).

is inadequate to state a constitutional violation under the Eighth Amendment. See, e.g., Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (unpublished) (explaining that "[a] prisoner's allegations of verbal harassment, unaccompanied by another injury, are not cognizable under [Section] 1983" (citations omitted)); accord Proctor v. James, 811 F. App'x 125, 128 n.2 (3d Cir. 2020) (unpublished); Gandy v. Reeder, 778 F. App'x 149, 150–51 (3d Cir. 2019) (unpublished); Washington v. Rozich, 734 F. App'x 798, 801 (3d Cir. 2018) (unpublished); McCormick v. Kline, 670 F. App'x 764, 765 (3d Cir. 2016) (unpublished).  Thus, Plaintiff's Section 1983 claims against Defendants McCloskey and Beatty will be dismissed for failure to state a claim upon which relief can be granted.

### F.      Rule 20 of the Federal Rules of Civil Procedure

In addition to the deficiencies discussed above, the Court finds that Plaintiff's complaint, which names numerous Defendants, fails to satisfy Rule 20 of the Federal Rules of Civil Procedure. Rules 18 and 20 explain the circumstances in which multiple claims and multiple defendants may be joined in a single action.  Rule 18 provides that "[a] party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  See Fed. R. Civ. P. 18(a).  In other words, when an action pertains to only one defendant, a plaintiff may assert every claim that he has against that defendant, regardless of whether the Plaintiff's claims are factually or legally related to one another, subject to the limitations of federal subject-matter

jurisdiction.  See 6A Charles Alan Wright & Arthur Miller, et al., Federal Practice & Procedure § 1582 (3d ed. Apr. 2023 update); see also Fed. R. Civ. P. 18(a).

When, however, a plaintiff seeks to join multiple defendants in a single action, Rule 20 becomes relevant.  See Wright & Miller, supra, § 1655.  More specifically, Rule 20 governs permissive joinder of parties and provides that a plaintiff may only join multiple defendants in a single action if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences[,]" and (2) "any question of law or fact common to all defendants will arise in the action."  See Fed. R. Civ. P. 20(a)(2).  Thus, notwithstanding the broad joinder-of-claims language of Rule 18(a), a plaintiff may join multiple defendants in a single action only if the plaintiff asserts at least one claim connecting all defendants that (1) arises out of the same transaction or occurrence and that (2) involves a common question of law or fact.  See id.; Wright & Miller, supra, § 1655.  In other words, there must be at least one common claim against all of the named defendants. Once a plaintiff satisfies this requirement, he may invoke Rule 18 to assert "as many claims as [he] has" against one or more defendants, even if those additional claims are unrelated to the common claim linking all of the defendants.  See Fed. R. Civ. P. 18(a); Wright & Miller, supra, § 1655.

Here, Plaintiff's complaint violates Rule 20 as the Court is unable to discern a single claim in his pleading that properly connects all of the named Defendants. Indeed, there is no plausible connection between the numerous defendants, either via a common transaction or occurrence or a common question of law or fact.  As such, the Court concludes that Plaintiff's complaint also fails to comply with Rule 20.  See Fed. R. Civ. P. 20(a)(2).

The Court further concludes that Plaintiff's noncompliance with Rule 20 is particularly problematic in light of the Prison Litigation Reform Act ("PLRA"). Under the PLRA, the full filing fee must ultimately be paid by a prisoner-plaintiff in a non-habeas action. Thus, allowing a prisoner-plaintiff to include a number of independent claims against the various prison defendants in a single civil action without making the required connection among the joined defendants under Rule 20 would, effectively, circumvent the filing fee requirement of the PLRA.  See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees" (citing 28 U.S.C. § 1915(g))); Sanders v. Rose, 576 F. App'x 91, 94 (3d Cir. 2014) (unpublished) (concluding that the district

court did not abuse its discretion when it directed the prisoner-plaintiff to amend his original complaint in order to comply with the Federal Rules of Civil Procedure because the plaintiff had included a plethora of separate, independent claims, which would have circumvented the filing fee requirement of the PLRA (citing George, 507 F.3d at 607)).

### G.    Leave to Amend

The next issue is whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id.  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim

upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court finds that granting Plaintiff leave to amend as to his Section 1983 claims against Defendants the DOC, the Pennsylvania Board of Parole, SCI Huntingdon staff, McCloskey, and Beatty would be futile, as no amendment could cure the deficiencies discussed above.  However, the Court cannot say that granting Plaintiff leave to amend would be futile as to his Section 1983 claims against Defendants Wendel, Conway, Cousins, DelBianco, Dancha, and Ramper, and, thus, the Court will grant Plaintiff leave to file an amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, Plaintiff is cautioned that neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## H.    Plaintiff's Motion for the Appointment of Counsel

In addition, to his complaint, Plaintiff has also filed a motion seeking the appointment of counsel.  (Doc. No. 7.)  In support of his request for counsel, Plaintiff alleges that he is unable to afford counsel, that his imprisonment will greatly limit

his ability to litigate this case, and that his case is complex and will require significant research and investigation. (Id. at 1.) Plaintiff further alleges that he has limited access to the prison's law library and limited knowledge of the law. (Id.) Finally, Plaintiff alleges that this case will likely involve conflicting testimony and that counsel would be better able to present his evidence and cross-examine witnesses. (Id.) Thus, based upon all of these allegations, Plaintiff requests that the Court appoint him counsel. (Id. at 2.)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1). See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted). The Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant. See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law. See Montgomery, 294 F.3d at 498–99 (citations omitted). Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case;

(2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf.  See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive."  See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress[,] and that "[t]hey are not exhaustive, nor are they each always essential").  Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted.  See Tabron, 6 F.3d at 157–58.

Having reviewed Plaintiff's motion seeking the appointment of counsel, the Court concludes that counsel is not warranted at this time.  Under the two (2)-step process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel.  See Houser, 927 F.3d at 697.

At this time, the Court cannot say that Plaintiff's claims have any arguable merit in fact or law, as the Court has determined that his complaint fails to state a

claim upon which relief can be granted.  Even if the Court were to assume arguendo, however, that Plaintiff's claims have such merit, the Court would still deny his motion seeking the appointment of counsel at this time.  While the Court appreciates Plaintiff's assertions that he is currently incarcerated and that his case will require significant research and investigation (Doc. No. 7 at 1), the Court finds that he has, nevertheless, demonstrated the ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as illustrated by the filing of his complaint, his compliance with the Court's Administrative Orders via his certified motion for leave to proceed in forma pauperis and his prisoner trust fund account statement, and his instant motion seeking the appointment of counsel.  (Doc. Nos. 1, 7, 10, 18.)  Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147–48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

Additionally, with respect to Plaintiff's concerns regarding the difficulties he will face in this litigation due to his incarceration, the Court notes that, if he were to need extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time.  And, finally, in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this

matter either <u>sua</u> <u>sponte</u> or upon a motion properly filed by Plaintiff.

## IV.   CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). In addition, the Court will deny without prejudice his motion seeking the appointment of counsel.  (Doc. No. 7.)  The Court will also grant Plaintiff leave to file an amended complaint.  An appropriate Order follows.

Dated: January 18, 2024                     s/ Sylvia H. Rambo
                                            SYLVIA H. RAMBO
                                            United States District Judge